The first case we'll have is U.S. v. Eckstein, and it's 24-31-38, and we'll hear from the appellant. Good morning, your honors. May it please the court, Justin Lalman for the appellant, Michael Eckstein. I'm going to aim to reserve two minutes of my time for rebuttal. Rule 11 draws a bright line rule absolutely prohibiting all forms of judicial participation in the plea negotiation process. It doesn't matter whether the participation was minor, unintentional, or even well-intentioned. The rule admits of no exceptions, and the rule was violated in this case. Now, the government and defense don't agree on a whole lot, but one thing we do agree on is that the court needs to review this in the context of the entire record. The record in this case shows that Mr. Cornwall or Mr. Eckstein's retained counsel, Carl Cornwall, called to advise the court that his client wished to enter a change of plea. The record reflects that two days after placing that call to the court, counsel called his client to explain to him the deal that he had already committed the court that he wished to accept. Mr. Eckstein didn't have a copy of the plea agreement. He didn't understand it. The connection on the call was not good, and Mr. Eckstein told his attorney that he did not proceed with the plea, that he wanted more time. At that point, Mr. Cornwall became angry, and that anger billowed over to the change of plea hearing. Counsel, can I interject for a minute? I have a lingering question that I hope you could address concerning Mr. Cornwall's request to withdraw. And it seems that right at the top of the change of plea, he indicated that he wanted the court to entertain his motion to withdraw. It doesn't seem that the court ever resolved that, the change of plea hearing proceeded. And I wanted to ask you how we should be thinking about the fact that counsel sought to withdraw, that that was before the court, but never, as far as I can tell, meaningfully resolved. Sure, your honor. I think the issue in this case is the plea agreement and the decision about whether, you know, the decision whether to go forward with the change of plea and the decision whether to have a substitution of counsel were really intertwined on this record. Mr. Cornwall starts out by saying, making clear that he doesn't have any interest in representing Mr. Eckstein unless Mr. Eckstein is going to plead guilty. And so his representation is contingent on that. The court goes through this discussion nominally about whether or not he's going to, whether Mr. Eckstein wants to replace counsel. But intertwined with all of that is the condition that Mr. Cornwall put on his representation, whether Mr. Eckstein wished to accept this plea. And so once the court makes these comments that says, advises Mr. Eckstein that it has a personal concern that if he does not go forward with Mr. Cornwall as his counsel, that the government may withdraw this plea offer. It's at that point that Mr. Eckstein says, I want to go forward with this plea. You're right, Judge. I don't want to lose this plea. And it's at that point that Mr. Cornwall says, I'm ready to go, Judge. And so I think at that point, it's been, the issue is in many ways, mooted or withdrawn based on Mr. Cornwall's statement that I'm ready to go, Judge. Does it have any effect on how we should be thinking about coercion? I certainly think so, Your Honor, because in this case, the attorney throughout this proceeding is threatening his client openly saying, I don't want to represent this man unless he's willing to accept this plea deal that I've negotiated for him. And there's nothing in the record where the judge tells defense counsel, that's your client's decision. That's a decision for him to make. And instead, the court's making comments to the defendant telling him, this attorney is very experienced, very skilled. In my experience, he cares very deeply about his clients. The court tells the defendant that if he does not go forward with Mr. Cornwall's counsel, that Mr. Eckstein may not qualify for appointed counsel and so may have to represent himself or go hire another attorney. And so Mr. Cornwall's threat is hovering over all of this proceeding. The conditional representation that he's only willing to provide if Mr. Eckstein will plead guilty is embedded in the background of this entire case. Well, Mr. Lalman, given the emphasis you put on maybe suggested coercion from the lawyer rather than the court, let me give you a perspective that is at least arguable and tell me why it's wrong. And as you began with Rule 11, and it says the court must not participate in these discussions, meaning discussions to reach a plea agreement. And then as we get into the hearing, the court sees that she has to address this representation issue because this guy is saying, I want to withdraw. And so they close the courtroom and they have this proceeding to protect a privileged communications or just to protect the defendant. And the perspective is the thrust of this whole thing was the court quite appropriately addressing the representation issue. And she did so throughout. There's just a couple lines in the transcript that she says in connection with the representation issue that this government doesn't have to stick with this plea if it's delayed. And she says that twice. But the overwhelming thrust of the transcript indicates this is an issue about representation, not the court interfering in the plea discussions. Why is that a wrong perspective? Sure, you are. So two points on that. I think it's I think principally where the judge really crosses the line here is when the judge says, I'm at a loss for what to do here. My concern, expressing it as a personal concern of the court, is that if you don't if you go forward with seeking substitute counsel, the government may withdraw this plea and not re-extend it to you. So how do you want to proceed right now? And so the judge is actively linking this decision about what do you want to do with your counsel to the ongoing plea negotiations. There's no record in this case that the government had ever communicated any sort of timeline or deadline on its plea offer. The government or the court, though, expressed it as a personal concern. The other thing I would note is going back to Cano Varela, this court's main case. The kind of factual circumstances there were the same as far as what was leading up to the hearing. In that case, the defendant had communicated that he wanted to accept a plea agreement. Right before that, he changed his mind and said, you know what, I want a new attorney. I don't trust this attorney. I want somebody new. And so the court held a status conference, and the status And during the course of that, the parties got into plea negotiations. The comments in that case, I acknowledge, are different than what we're dealing with here, but these issues were intertwined there just as they are here. And in that case, the court recessed the proceeding for a few days after making these comments, allowed the defendant to go and decide whether he wanted to get new counsel or whether he wanted to continue with his counsel and take this plea or go to trial, and eventually the defendant came back and entered a plea, and the court in that case reversed. And so I think just because we're talking about two things here, counsel and the plea, they're very clearly intertwined on this record. And the court's comments, they're not just intertwined by Mr. Cornwall, they're intertwined by the court in this comment as far as tying the decision about counsel to the potential impact of ongoing plea negotiations. So you're viewing it as a coercion by the court rather than the court participating in the plea negotiations? Sure. Well, Your Honor, I don't know that I... The rule is not limited to judicial attempts to outright coerce or threaten a defendant. The rule broadly prohibits any judicial participation in plea negotiations full stop, whether the judge had only the best interest in mind or whether it was completely inadvertent or unintentional. And so I'm not saying that the judge had some secret motive to try and coerce the defendant. The rule is not so limited. It just bars participation. Do the circumstances of counsels wanting to withdraw affect the B1D issue as well? I think so, Your Honor. In this case, on that issue, we have agreement that there was error and that it was plain. And so the only issue is, is whether there's a reasonable probability that Mr. Eckstein would have not accepted this plea had the court advised him that he had a right to appointed counsel if he could not afford counsel. And on this record, it's clear that this relationship is toxic, that they do not get along, that there is not trust. And he is very reticent to accept this plea. And again, at the third plain error prong, our burden is just to show a reasonable probability. It's less than a preponderance. It's just a probability sufficient to undermine the problem. Well, what are we looking specifically for? That without the... That had he known he was eligible or could go through the eligibility determination for appointment of counsel, that he would not have taken the plea? Yes, I think that's the issue. And I think the evidence here for that is just his reluctance throughout the whole first half of this proceeding to go forward with this agreement. And then layered over that, all of the issues with this relationship, it's clear from the record that this was not a good relationship. Defense counsel recognized on the record that the attorney-client relationship had completely broken down. Well, at one point, your client does say, he says, I mean, it's not even him. I mean, he sort of distances himself or his decision-making from whatever conflict he may have had with his attorney. How should we be thinking about that? So, Your Honor, I think part of that is that that comment comes after the judge has participated in the plea negotiations, after the judge has made these comments. So, we have to agree with you on the C1 error then in order for the the B1D error to be availing? I didn't think those issues were linked. Your Honor, I think they are related. I don't know that you have to rely on it. I do think it's a circumstance to consider in this case, is these comments, whether they rise to the level of participation in the court's mind or not. It's very clear that the court's comments were a motivating factor that changed this defendant's mind. And this court, other courts have recognized that any participation by the judge in plea negotiations, no matter how minor, exerts pressure. And I think you see it in this transcript from those comments. But even more broadly, just going back, even without those comments, we still have a very but I mean, I think those comments also followed after the court expressed doubt about whether this client would qualify for appointed counsel. Well, go ahead and finish your answer. Well, I was just going to say, these comments came after the court expressed some doubt or reservation about whether Mr. Eckstein would qualify for appointed counsel, which I think this court needs to also take into account. Okay. I just want to go back to the 11C1 and I just really have one question. And try to let you have your rebuttal time that you wanted. The way that Judge Teeter had said, you know, the government, you know, that offer may not be here, but the government, I have no reason to believe that the government is going to withdraw that offer. I'm just telling you, you know, that is always a possibility. It may be a possibility of 0.1 here. And she did say, I don't know whether this is a good plea deal for you or not. But, you know, what if, and I think Judge Rossman mentioned or somebody mentioned that she reiterated that twice. What if she mentioned that four times? Would it, if, and I know you argue that it doesn't have to be a satisfied plain error, but if we reject that and if we do apply the plain error standard, would it be an obvious error under prong two if Judge Teeter had, you know, reiterated? I have no idea, you know, you know, they've never said that they're going to withdraw the offer. It may continue to be available three months from now. I just, I'm just telling you, you know, I don't, know any of these things. Is that an obvious participation in the plea negotiation? Your Honor, I don't have a case that would say that that would be obvious. I think that the rule itself though is very broadly written as far as any participation. And this court can recognize a plain error just based on the text of the rule itself. In that case, the judge is discussing potential threats or potential leverage that the government could exert in plea negotiations, which I do think falls within the rule. This is clear. That would clearly be a lot better thing to have said than what was said on this record, but the court expressed it as a personal concern of the judge. Okay. Judge Rossman or Judge Murphy, did you, you're out of time, but do you all have any additional questions? Okay. Judge Murphy, you're on mute, by the way, but I think you should know. So we'll hear from Mr. Mag. Good morning, Your Honors, and may it please the court, Jared Mag on behalf of the United States. Judge Bacharach, I think I'd like to start kind of where you left off because again, Cano Varela specifically states that Rule 11 doesn't establish a series of traps for imperfectly articulated oral remarks by the court. And, you know, and as Mr. Lalman said, and we agree, you cannot look at those remarks in isolation. You have to look at exactly what Judge Teeter's concerns were here. And as much as the defendant insists that this case is about the plea agreement itself, our position is that it's not. Again, telling the defendant that the government is not under an obligation to continue the plea merely informed him that if he insisted on getting new counsel, that he should be informed that he will not possibly be placed back in the exact same position that he is today. And the government's position is that kind of statement ensures the defendant is making his decision about counsel with eyes wide open. So you have to look at exactly what the statement was designed to do. Is it the government's view, is it the government's view that Judge Teeter ruled on the motion to withdraw or that it became moot? Or what is the government's position on Mr. Cornwall's motion to withdraw? Thank you, our position is consistent with Mr. Lalman's position on that, that once the decision was made that Mr. Eckstein was willing to move forward with the plea, Mr. Cornwall's representation sort of followed right along with that and that it was exhausted based upon that decision alone. There certainly isn't anything in the record to suggest that Judge Teeter ruled definitively on his motion to withdraw. We're not standing here saying that she did, but we do agree with Mr. Lalman that it was sort of hand in glove when it, when Mr. Eckstein decided to enter his guilty plea. So maybe you could help me with something I'm struggling with on the B1D issue. I mean, the government has, agrees that there was a plain error there because of the failure to explain the entitlement to appointment. But on the third prong, it seems to me that we have circumstances where it's not just that Mr. Eckstein got this information early on at the arraignment, which our cases say is probably enough, but that there was misinformation at this particular ex parte hearing because the court says, you don't deal with this and move forward. We're going to have to send this back to the magistrate judge. And that sort of presentation, at least on my read, might suggest that that's some misinformation. It's not just the absence of information that he may have received and is cured by what was said at the arraignment or earlier on in the proceedings. But this sort of connects those dots in a way that concerns me on the third prong. So I wanted to know what the government's position would be on how I should be thinking about that, whether it was a misinformation, a misstatement rather than the absence of information alone. No, I don't believe it was a misstatement on the court's part because she certainly had an obligation to tell him, given the fact that obviously he had been in custody for some time. He had hired Mr. Cornwell to begin with, but there had to be a determination in the event that a decision on new counsel was in his favor, that he would actually qualify either for appointment or he would again have to retain counsel based upon his financial circumstances. That decision would have to be made. And I think she was just simply informing him of that fact, which it's not a misstatement. Well, I think what's troubling is that you're right. It is based on his financial circumstances. But what the court's presentation suggests is it wasn't linked. Eligibility wasn't going to be based on that. It was really going to be based on whether he wanted to take this deal or not. And that seems different than the sorts of cases where the court is just passing on eligibility very generally. Maybe it's not a full statement, but the defendant got the correct information earlier on. This is sort of linking the eligibility to whether you're going to take the deal. And that's the problem I'm having with is perhaps favoring the appellant's position on the third prong. Well, I guess I would counter with this, Judge, and I can appreciate that understanding of the record. But in looking at what Mr. Eckstein said, it seemed that his sort of concerns revolved around his ability to read the plea agreement itself and that that was part of the reason that he was struggling with whether or not to move forward was he wanted to get a better understanding. And I think it should not be lost on the court that Judge Teeter gave him the opportunity to extend the hearing out through Thursday so he could sit down and read the plea agreement. So it wasn't as if she was forcing him into a decision that day. She gave him the option to take the time that he needed. She was not insisting that he move to a plea that afternoon. And so in the circumstances of what Judge Teeter was doing here, we believe she was taking every step to ensure that the defendant's rights were protected and not trying to coerce him into doing anything that he didn't otherwise want to do. His decision obviously was, and again, from a cold record, it's sort of hard to understand maybe what the tenor of his responses were at the time and sort of the tone of Mr. Cornwell's statements and all of that. So we don't want to ascribe something to the record that may not be there. Everything about the record suggests that Judge Teeter was there to protect the defendant's rights. And so we don't see the level of coercion that the defendant sees under the circumstances. But again, let's not forget here what the question presented is. This isn't the case about coercion on the part of Judge Teeter. That is not brief. That was not presented by the defendant. The government has not had an opportunity to respond to any claim of coercion. This is a case about whether or not the judge ran afoul of Rule 11C. And again, our position is that under the circumstances, when you look at the totality of the record, you will find that her statements were geared toward Mr. Eckstein's decision to make an informed decision on whether or not he wanted new counsel. And I would echo what Judge said that Judge Teeter's saying that the obvious fact, and again, Judge Bacharach, I think, appreciated this as well, the obvious fact that a judge might want to inform the defendant, please understand that if you get new counsel, you should not expect to come back to this court and say, okay, I'm here to plead today, because the state may decide it has changed its mind. Can I push back on that a little bit? Because I may be misremembering the record, but I thought Judge Teeter, when you said that she was willing to adjourn for the defendant to talk with counsel, to have him go through the plea agreement, and you mentioned about deferring the change of plea until Thursday, I thought that that was the point in which Judge Teeter said, look, we can break, but they may not, when we resume, the government may not be willing to make that same plea deal. But whether that's true or not, let me ask you in the form of a hypothetical, because any plea, we've all litigated in whether it's civil or criminal litigation, and part of civil negotiations, plea negotiations, I would assume involves an ingredient of pressure, showing leverage that you have more downside to rejecting whatever I'm offering civilly or privately than to accept. And if Judge Teeter had said, look, I will break for an hour, and you can go through this plea, may not be a good plea deal for you, but I'm just telling you in one hour, there is a chance that the government is going to withdraw that plea. So good news and bad news, I'm going to give you time, but that time may be for naught if, hypothetically, Judge Teeter knew that in the history of the District of Kansas, no one in your office had ever done such an amazing thing, which I think is probably true, to revoke a plea offer because the judge takes a break for 45 minutes or an hour. Would that create an obvious participation, not because of pressure, because you're right, 11C1 is participation, but isn't that participation in the negotiation if I'm going to say, as a judge, you can take a break and you can understand it, but you may have just frittered away your one and only opportunity to get out of this without a trial? Judge, I think in a vacuum, that gets closer to the line, but here, I think what we have to appreciate is what Judge Teeter said repeatedly to Mr. Eckstein, and even after he makes the decision, she reinforces with him, look, I am not telling you, you have to take this plea. She does this on a number of occasions to ensure, I think, herself, that she had not crossed the line, and she wanted to ensure herself that she herself had not coerced him, and by the fact that she had done that, I think at least three times reinforcing that I am not telling you, you have to do this, was her concern at the end of the day that he was making an informed decision about whether to plead, but I do agree with you, in a vacuum, that is much closer to the line. I would say this, however, the fact that this was an ex parte proceeding, I think you have to give some credit to the judge to understand that trying to get into anything related to the plea itself without the government in the room might otherwise cause serious problems, and there's nothing to suggest that Judge Teeter would otherwise do something like that under the circumstances when she moved everybody out of the room for one reason and one reason only, and that was to determine whether or not the defendant himself wanted new counsel, and again, Cano Varela talks about the issue of judges making remarks that should not force them to be trapped into a situation that would cause them to run afoul of Rule 11, and this statement that she made, as we say, we think was helpful to the defendant to inform him of making a proper decision on whether or not he wanted counsel, because you could see a situation where he returned to the court and said, I'm here to plead, and the government had withdrawn, and she said, well, you should have told me that the government could have withdrawn the plea, and you know, that hypothetical certainly is something that would put the defendant back on his heels and be upset about that by not being informed, so I don't think there was ill intent on the judge's part to make the statement about the government's ability to withdraw, that it was simply designed to inform him appropriately to make sure that he was going into the decision with eyes wide open. Counsel, on the C-1 issue, do you claim this is plain error review or harmless error review? Judge, we stand by our position that it's plain error review. Again, I have studied this issue, and I can completely appreciate the problem that exists with the defendant trying to object to his own moving forward. It is an odd legal quirk that exists under the circumstances, but our position is, when you look at Canna Varela, actually, when you look at what this court said in Sandoval Enrique in footnote 14, that de Villa instructs that we must always review error either under harmless error rule or plain error rule, and when you look at de Villa, what Justice Ginsburg stated on page 2149, it's very clear that it calls for either harmless error review or in the event that the defendant doesn't object to plain error review, so there really isn't any concern with the issue about when plain error review occurs. All that case tells us is that it's not structural error, so it's either harmless error or plain error, and why isn't it that on the facts here where we have this, I think, a really confounding fact that's not present in all of the cases where, in addition, we have this pending motion to withdraw in a conflict with counsel, that this is really not the kind of circumstance where it's fair to apply plain error review. Again, Judge Rossman, I can certainly appreciate that position. Our position simply is, as the court has currently instructed the parties, that failure to object results in plain error review and that there is support from that all the way from this court to the U.S. Supreme Court, and in that circumstances, we believe that we're bound by it. Nevertheless, as we stated, we believe that even under harmless error review, under the circumstances that the judge's remarks did not otherwise cause the defendant to change his mind under the circumstances, and so we think that we win even under harmless error review, but this certainly is a vehicle for the court to clarify exactly circumstances, and I think that they're rare. I couldn't find a case directly on all fours with the facts of this case where the defendant's counsel would otherwise object to his own position, and it certainly puts that in a different posture. I see I'm out of time. I'm happy to stand for further questions. May I ask a question? You betcha. On the other issue on the disclosure of the right to counsel, the B1D question, I want you to assume that we say the fact the magistrate referenced this two years before is just too stale, and so that doesn't count. What is your view on the third problem of prejudice? Well, Judge Murphy, I think when you take into account not only the fact that the magistrate had said that, and let's assume for the moment that it's stale. In the ex parte hearing, it wasn't as if Judge Teeter hadn't expressed to him what his options otherwise would be in the event that he decides that he wants new counsel, so it certainly was raised as to whether or not new counsel could be appointed or retained, so he did not go into the plea hearing, which occurred right after the ex parte hearing. He didn't go in with a sort of, I would argue, a question about whether or not he could otherwise get appointed counsel because Judge Teeter had spoken with him about the possibility of appointed counsel, but that that matter had to be resolved in the wake of a determination on his financial abilities, so it wasn't something that was unknown to him. But that sounds like an argument that there was no error. What I'm asking about is that the third problem, prejudice. If it doesn't count that the magistrate's admonition is good enough, what's your view on prejudice? Well, I think if the court found that it was stale, we would otherwise have a difficult time trying to defend the prejudice side of this except for the fact that the defendant, once he made the decision to enter a guilty plea and during the colloquy in the plea hearing itself, did not suggest that he was confused about anything with respect to what his rights were to counsel. That being said, even so, let's assume we lose on the third prong. On the fourth prong, the facts here do not suggest that a miscarriage of justice would have otherwise occurred in this circumstance because, again, he was informed during the arraignment and he was otherwise informed by Judge Teeter during the ex parte hearing. So we think that at the end of the day, we would still prevail on the fourth prong. Matt, happy to answer any other questions, but otherwise we would ask the court to affirm. Judge Barbee, did you have any follow-up? No, I had nothing else. Okay, Judge Rossman, did you? I don't, thank you. All right, thank you, Mr. Lohlman and Mr. Magg. Well presented. This matter will be submitted.